## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNION PACIFIC RAILROAD COMPANY,** | ) | **CASE NO. 8:10CV235** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **TEMPORARY** |
| **v.** | ) | **RESTRAINING ORDER** |
| | ) | |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and LISA P. JACKSON, in her official capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 6). The motion is supported by a brief and index of evidence (Filing Nos. 7 and 8). Defendants entered a Notice of Appearance (Filing No. 12), and a hearing on the Motion for Temporary Restraining Order was set for the same day on which it was filed, June 23, 2010 (Filing No. 11). Counsel for the parties appeared and presented argument, but no further evidence was offered. The Court entered a Temporary Restraining Order on the record at 5:25 p.m., noting that a written order would follow and, if the written order in any way deviated from the order issued at the time of the hearing, the written order would govern.

### BACKGROUND

The dispute between the parties involves the Omaha Lead Site ("OLS"), an area of approximately twenty-seven square miles in Omaha, Nebraska, that the United States Environmental Protection Agency ("EPA") has listed as a Superfund site due to lead contamination in residential yard soil. Plaintiff Union Pacific Railroad Company ("Union Pacific") has been identified by the EPA as a potentially responsible party as defined by § 107(a) of the Comprehensive Environmental Response Compensation and Liability Act

("CERCLA"), 42 U.S.C. § 9607(a).  The EPA contends that Union Pacific is liable under CERCLA, because Union Pacific owned a portion of the property and had leased it to a refinery company, ASARCO.  The EPA contends that lead contamination in the area was caused by emissions from the smokestacks of ASARCO and another lead-processing operation, Aaron Ferer & Sons Company.  Union Pacific contends that OLS data, as well as its own independently conducted site investigations and data evaluations, show that lead-based paint is the cause of the contamination.

On December 15, 2004, the EPA issued an Interim Record of Decision, selecting an interim remedy, and sent Union Pacific a Special Notice Letter requesting payment of the EPA's past costs of performance of work.  On December 16, 2005, the EPA issued a Unilateral Administrative Order ("UAO") against Union Pacific.  The UAO directed Union Pacific to implement the EPA's selected interim remedy at the OLS at an estimated cost of $50 million.  The UAO is still in effect and, if a judicial decree were necessary for its enforcement, could result in the assessment of substantial fines and penalties against Union Pacific.  On July 31, 2009, the EPA again asked Union Pacific to participate in a Special Notice Procedure, this time to implement the entirety of the final remedy, at an estimated cost of $200 million.  Union Pacific declined to implement the entire remedy and the EPA rejected Union Pacific's offer to perform certain work.

Union Pacific submitted requests under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") to the EPA in 2002, 2003, 2004 and 2009.  The purpose of the FOIA requests was to enable Union Pacific to evaluate the merits of the EPA's findings and conclusions concerning the OLS. Union Pacific contends that the EPA never fully complied with the 2004 request, but the EPA's records show that the EPA considers the 2004

2

request to be subsumed in the 2009 request.  Union Pacific states that, beginning in September 2009, the EPA provided partial responses to Union Pacific's 2009 FOIA request.  The EPA has advised Union Pacific that it will require at least another six months to respond fully to Union Pacific's 2009 FOIA request.  Within the volume of documents released by the EPA to date, Union Pacific has identified eight emails indicating that an EPA supervisor instructed EPA employees and EPA affiliates to destroy information that may be responsive to Union Pacific's FOIA requests, or that may be part of the Administrative Record, or that may be relevant in future enforcement actions.  Other emails released by the EPA appear to express an EPA employee's concern over the EPA's practice of deleting emails relevant to a FOIA request.

## DISCUSSION

When considering a motion for a preliminary injunction, a court must weigh the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between that harm and the injury that issuance of an injunction might inflict on other interested parties, and the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)(*en banc*).  The Court weighs the same factors to determine whether a temporary restraining order should issue.  *Baker Elec. Co-Op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

Union Pacific has addressed the required *Dataphase* elements.  It presented an extensive index of evidence that purportedly shows the EPA's intentional destruction of information and data that may be subject to Union Pacific's FOIA request.  Based on the complexity of the claims, however, it cannot be said at this time that Union Pacific is likely

3

to succeed on the merits of its claims, and this first *Dataphase* factor weighs in favor of neither party.

Union Pacific has shown that the other *Dataphase* factors support issuance of a Temporary Restraining Order.  There is an imminent threat of irreparable harm to Union Pacific, in terms of its ability to gather data pursuant to its FOIA requests and to defend itself against the EPA's claims.  Union Pacific has identified evidence from which this Court can draw an inference that the EPA has engaged in a practice of deleting relevant emails in response to Union Pacific's FOIA requests.  Issuance of the injunctive relief requested will not likely cause significant harm to third parties.  A temporary restraining order merely preserves the status quo by ensuring that no records relating to the FOIA requests are destroyed until the issues can be fully adjudicated.  Injunctive relief is also in the public interest, given the FOIA's purpose of ensuring transparency in government practices.  Also important to the public interest, the information at issue may affect public health, safety and welfare, because it may help in the determination of the true source of lead contamination in Omaha's residential neighborhoods.

Accordingly, the Court concludes that a temporary injunction is warranted in favor of Union Pacific.

IT IS ORDERED:

1.    Plaintiffs' Motion for a Temporary Restraining Order (Filing No. 6) is granted;

2.    Defendants and their employees are immediately enjoined from transporting, removing, destroying, deleting, modifying, or in any way tampering with records, data, or other information, including electronically stored information, in their possession or control that is, or potentially may be, responsive to the requests submitted by Union Pacific Railroad Company under the Freedom of Information Act;

4

3.    Defendants are ordered to identify, collect, and preserve records, data, or other information, including electronically stored information, and any media used to maintain or store such information, that are or may be responsive to Plaintiff's Freedom of Information Act requests that are in Defendants' possession and/or in the possession of their employees, including any records of attempts to destroy, delete, or hide such information;

4.    Defendants will give notice of this temporary restraining order to any of their independent contractors or affiliates whom they have reason to believe may be in possession or control of such records;

5.    Defendants will designate an individual well acquainted with their computer technology and electronically stored information systems and well acquainted with their management structure to serve as a spokesperson, liaison, and compliance officer to help insure the enforcement of the Temporary Restraining Order, and will notify the Court and Plaintiff of the identity of that person on or before Monday, June 28, 2010;

6.    Prior to the hearing on the Motion for Preliminary Injunction, the parties will meet and confer regarding the appointment of a forensic expert to be designated by the Court.  The parties will determine whether they can agree upon the recommendation of an individual to be appointed as a forensic expert and, if they cannot, the parties may make separate recommendations to the Court;

7.    Pursuant to Rule 65(c) and the provisions of this Order, the Court requires Plaintiff to post a bond with the Clerk of Court of the United States District Court for the District of Nebraska in the amount of $500.00.

8.    The hearing on Plaintiff's Motion for Preliminary Injunction will take place on Tuesday, July, 13, 2010, at 10:00 a.m., before the undersigned in Courtroom No. 2, Third Floor, Roman L. Hruska United States Courthouse, 111 South 18th Plaza, Omaha, Nebraska, 68102.

9.    Prior to the hearing on the preliminary injunction, the parties will file with the Court, and serve upon the opposing party, any affidavit testimony or other evidence supporting their respective positions regarding whether a preliminary injunction should issue, according to the following deadlines:

a.    Plaintiff will file and serve affidavit testimony or other evidence on or before July 2, 2010;

b.    Defendants will file and serve affidavit testimony or other evidence on or before July 8, 2010; and

5

      c.     Any rebuttal evidence will be filed and served upon the opposing party on or before July 12, 2010;

10.    This Temporary Restraining Order will expire at 11:59 p.m. on July 13, 2010, unless otherwise extended or vacated. The Court considers Defendants' request that the hearing not take place until July 13, 2010, as consent of the adverse party to an extension of the temporary restraining order. *See* Fed. R. Civ. P. 65(b). The Rule requires that "[the reasons for an extension . . . be entered in the record." Fed. R. Civ. P. 65(b).

DATED this 24th day of June, 2008, at 10:55 a.m., Central Daylight Time.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge